# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.  01-3951

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Richard Allen Allen, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  June 11, 2002

Filed:  July 31, 2002

_____

Before WOLLMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Richard Allen Allen appeals from his conviction on seven counts of various crimes stemming from a conspiracy to manufacture methamphetamine.  He contends that the district court[1] erred in not suppressing evidence seized in a search of his home, garage, and car; that the district court improperly admitted as evidence receipts found in his home; and that the evidence was insufficient to support his conviction

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

for creating a substantial risk of harm to human life while manufacturing methamphetamine. We affirm.

## I.

At approximately 3 a.m. on November 3, 2000, a Southeast Iowa Drug Task Force officer and a Wapello County Deputy Sheriff pulled over a car driven by Robert Craycraft. Craycraft consented to a search of the vehicle, and the officers found evidence that would indicate Craycraft was involved in manufacturing methamphetamine. The officers told Craycraft that cooperating with them would probably help his situation, whereupon Craycraft told them about Allen. He said that he and Allen had driven to Oskaloosa, Iowa, the night before to purchase ephedrine/pseudoephedrine pills to use in making methamphetamine and that they had driven around the countryside looking for anhydrous ammonia to steal. He also said that Allen had approximately thirty lithium batteries and twenty soda cylinders in his possession or at his residence. Craycraft described Allen's house, told them the address, what cars were parked there, who owned the black van parked at the house, and that Allen was a felon. He also told the officers that Allen had said that he "isn't going down without taking someone with him" and that Allen carried a clip-fed pistol in his pants.

Later that day, Drug Task Force members obtained a "no-knock" search warrant for Allen's Ottumwa, Iowa, residence and outbuildings from an Iowa state magistrate. The affidavit supporting the warrant was based primarily on the information given by Craycraft, but it also included that the officers had verified some of the information, including the address and the owner of the black van. Members of the Drug Task Force executed the warrant and arrested Allen. They seized various items used in the lithium-ammonia reduction method of manufacturing methamphetamine, including plastic hoses and funnels, salt, carbon dioxide soda canisters, bottles of pseudoephedrine pills, a gram scale, a coffee grinder, coffee

filters, starter fluid and punctured starter fluid cans, and lithium batteries. Several of these items contained methamphetamine, traces of methamphetamine, or other substances indicative of various stages of the methamphetamine manufacturing process.

The district court denied Allen's pretrial motion to suppress the evidence found in the search of his residence. At trial, the government introduced, over Allen's objection, Wal-Mart receipts along with the testimony of a law enforcement officer who testified that the bar codes on the receipts matched the bar codes for batteries the officer purchased at Wal-Mart. The jury convicted on seven counts of the eight-count indictment, and the district court imposed a 235-month sentence. Allen now appeals from the denial of his motion to suppress, the admission of the receipts, and his conviction for one count of creating a substantial risk of harm to human life while manufacturing methamphetamine.

## II.

In reviewing a denial of a motion to suppress, we "examine the factual findings underlying the district court's denial of the motion to suppress for clear error and review de novo the ultimate question of whether the Fourth Amendment has been violated." United States v. Clayton, 210 F.3d 841, 845 (8th Cir. 2000) (citation omitted). Probable cause for the issuance of a warrant exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). On appeal, we will uphold a judicial determination of probable cause if we believe that there was a substantial basis for concluding that a search would uncover evidence of wrongdoing. Id. at 236.

Allen contends that the search warrant affidavit did not contain information sufficient to support a finding of probable cause. He argues that the information Craycraft provided did not connect his home to methamphetamine manufacturing.

He also argues that because Craycraft had no history of reliability as an informant, the issuing magistrate should not have relied on the information he provided.

In determining whether probable cause exists, we do not evaluate each piece of information independently; rather, we consider all of the facts for their cumulative meaning. United States v. Morales, 923 F.2d 621, 623-24 (8th Cir. 1991). Taken together, we believe the information contained in the search warrant affidavit created a fair probability that law enforcement officers would discover further evidence of illegal drug activity at Allen's residence. The facts that Allen had twenty soda cylinders and thirty lithium batteries in his possession and that he had spent the night with Craycraft buying ephedrine/pseudoephedrine pills and looking for anhydrous ammonia establish probable cause to believe that Allen had methamphetamine manufacturing equipment and ingredients at his residence. The fact that possessing the soda cylinders and batteries is legal does not require reversal because innocent behavior can provide the basis for establishing the existence of probable cause. United States v. Nation, 243 F.3d 467, 470 (8th Cir. 2001) (citing Gates, 462 U.S. at 243 n.13). As to Craycraft's credibility, even though he had no record as an informant, the information he provided was sufficiently credible both because his statements were against his penal interest and because the police were able to corroborate some of the information he provided. See United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001) (corroboration of minor, innocent details can support probable cause; informant made statements against penal interest after being caught with drugs by police); United States v. Reivich, 793 F.2d 957, 959-60 (8th Cir. 1986) (same); cf. United States v. Gibson, 928 F.2d 250, 253 (8th Cir. 1991) (no probable cause where police only corroborated innocent details provided by anonymous caller). Thus, the search warrant affidavit provided information sufficient to support a finding of probable cause.

## III.

A facially sufficient affidavit, however, may be challenged on the ground that it includes deliberate or reckless falsehood. Franks v. Delaware, 438 U.S. 154, 171 (1978). Allen contends that the affidavit violated Franks because it omitted that Craycraft had a felony criminal record, that the officers had promised Craycraft leniency in return for his assistance, and that Craycraft was under the influence of methamphetamine at the time he provided the information. To prevail on a Franks claim based on omissions of fact, Allen must prove first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. United States v. Reinholz, 245 F.3d 765, 774 (8th Cir. 2001).

Allen first contends that the affiant misled the issuing magistrate by failing to include Craycraft's criminal history in the search warrant affidavit. Craycraft had three prior felony convictions, two for second degree burglary and one for delivery of a controlled substance. The affiant testified at the suppression hearing that he knew Craycraft had a criminal history, although he did not know its exact nature. Thus, the record does not clearly show that the omissions were either intentionally or recklessly misleading. Even assuming they were, however, Allen cannot satisfy the second step of the Franks test, because, as the district court stated, Craycraft's criminal history "does not add much" to the affidavit. The affidavit informed the magistrate that Craycraft had admitted to using methamphetamine and purchasing ingredients for manufacturing methamphetamine and was in possession of equipment that could be used for manufacturing methamphetamine, but also informed the magistrate that investigators had corroborated parts of his story. Thus, the affidavit already provided sufficient information for the magistrate to weigh Craycraft's credibility. See United States v. LaMorie, 100 F.3d 547, 555 (8th Cir. 1996) (affidavit stated that informant had confessed to burglary and arson, so issuing judge

"could hardly have been under the impression that [informant] was a model citizen" even though criminal history was not included).

Second, Allen argues that the affidavit omitted promises of leniency the officers made to Craycraft. The district court, however, found that there were only discussions of leniency, not promises. We have previously held that to support a finding of probable cause, search warrant affidavits need not provide judicial officers with all the details of bargaining between police and arrested persons from whom they are seeking to get information. Reivich, 793 F.2d at 962-63.

Finally, Allen contends that the affidavit should have revealed that Craycraft may have been under the influence of methamphetamine when he provided the information. Allen did not raise this issue to the district court, and so we review for plain error. Fed. R. Crim. P. 52(b); Clayton, 210 F.3d at 843. Allen provides no authority for the proposition that persons under the influence of methamphetamine cannot provide accurate information. The affiant, a narcotics officer who had had substantial experience in dealing with persons who had ingested methamphetamine, testified that Craycraft was lucid and coherent and that persons under the influence of methamphetamine are generally functional. Accordingly, there was no plain error in holding that the affidavit provided information sufficient to support a finding of probable cause.

For these reasons, none of the omitted facts individually violate Franks. Additionally, even if all three of the above items were included in the search warrant affidavit, it still would have supported a finding of probable cause. As we stated in a previous case, "a magistrate generally would not be misled by the alleged omissions of facts . . . because informants frequently have criminal records and often supply information to the government pursuant to plea arrangements." United States v. Flagg, 919 F.2d 499, 501 (8th Cir. 1990) (per curiam). The information Craycraft provided was sufficiently corroborated to support a finding of probable cause even

with the additional negative information about him. Accordingly, the district court did not err in denying the motion to suppress.

## IV.

Allen also contends that the evidence was insufficient to convict him for violating 21 U.S.C. § 858, which states: "Whoever, while manufacturing a controlled substance in violation of this subchapter, or attempting to do so, or transporting or causing to be transported materials, including chemicals, to do so, creates a substantial risk of harm to human life shall be fined in accordance with Title 18, or imprisoned not more than 10 years, or both." In reviewing a challenge to the sufficiency of the evidence, we will uphold the conviction if, viewing the evidence in the light most favorable to the verdict, a reasonable jury could conclude that the defendant was guilty beyond a reasonable doubt. United States v. Echols, 144 F.3d 584, 585 (8th Cir. 1998).

The government argues that we should interpret § 858 to include the risk of harm a methamphetamine manufacturer poses to his own life. Allen contends that the statute requires evidence of a substantial risk of harm to another person's life and that the government's evidence did not establish the existence of such a risk. We need not decide whether the government's position is correct, because there is ample evidence that Allen created a substantial risk of harm to third persons. An agent with the Iowa Division of Narcotics Enforcement testified to the numerous dangers presented by the lithium-ammonia reduction method of manufacturing methamphetamine. These dangers include the possibility of suffocation or burns from anhydrous ammonia gas, the possibility of damage to lungs from inhalation of pseudoephedrine, the possibility of combustion when lithium reacts with moisture, the possibility of the ether exploding, and the creation of poisonous hydrogen chloride gas. At least one other person was present in Allen's residence on at least one occasion, and the residence was located near a playground. Thus, there was ample evidence that Allen's

manufacture of methamphetamine created a substantial risk of harm to the lives of others.

## V.

Finally, Allen contends that the district court erred in admitting Wal-Mart receipts that were seized from his house in conjunction with testimony from an agent that served to identify the items on the receipt. We review decisions regarding the admissibility of evidence for abuse of discretion. United States v. Claxton, 276 F.3d 420, 422 (8th Cir. 2002).

Exhibit 8 was a pair of Wal-Mart receipts showing the purchase of lithium batteries and Sudafed cold and allergy tablets. The court first excluded the receipts as hearsay, but later admitted them after the government offered them for the limited purpose that "they were seized at the defendant's residence not . . . for the fact that they are, in fact, valid Wal-Mart receipts." Later in the trial, a government witness testified that he had reviewed the uniform product codes on Exhibit 8 and went to three separate Wal-Mart stores and purchased those items. Defense counsel objected to the admission of the items purchased and the new receipts on hearsay grounds, but the court overruled his objection and admitted the evidence. Allen now contends that the later testimony and exhibits demonstrate that the government in fact introduced the first receipts for the truth of the matter asserted: that Allen purchased ingredients used in methamphetamine manufacturing. The government argues that the receipts in Exhibit 8 were admitted only to connect the residence to drug activity, or, alternatively, that they constitute an admission by Allen that he purchased the items described on the receipts because he maintained control over the premises where the receipts were found and kept them for several weeks.

We need not enter into a discussion of the hearsay rule and its exceptions, however, because the admission of the receipts, if erroneous, was harmless. United

States v. Melecio-Rodriguez, 231 F.3d 1091, 1094 (8th Cir. 2000) (per curiam). We will reverse "only when an improper evidentiary ruling affects the substantial rights of the defendant or when we believe that the error has had more than a slight influence on the verdict." Id. (internal quotation omitted). Even without the receipts, there was substantial evidence connecting Allen to the purchase of methamphetamine ingredients and the manufacture of methamphetamine. All of the necessary equipment for the lithium-ammonia reduction method of manufacture, some containing residue of methamphetamine or other chemicals used during certain steps of the process, was seized during the search and introduced at trial. Several witnesses testified that Allen manufactured methamphetamine, and others testified that Allen provided them with methamphetamine. Because this evidence was more than sufficient to support Allen's conviction, the admission of the receipts and related testimony, if erroneous, did not affect Allen's substantial rights and certainly did not have a more than slight influence on the verdict.

The conviction is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.